**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MAHMOOD AKHTAR,

                              Plaintiff,

              v.

VITAMIN HERBAL HOMEOPATHIC
CENTER INC. D/B/A VHC USA INC,
IFTIKHAR CHOUDRY and TAYYABA
KUNWAR,

                              Defendants.

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

          Mahmood Akhtar ("Akhtar" or "Plaintiff"), by and through his counsel, The Legal Aid

Society and Kasowitz Benson Torres LLP, for his complaint against defendants Vitamin Herbal

Homeopathic Center Inc. d/b/a VHC USA Inc. ("VHC"), Iftikhar Choudry ("Choudry") and

Tayyaba Kunwar ("Kunwar" and, together with VHC and Choudry, the "Defendants"), alleges

upon knowledge as to himself and his acts, and upon information and belief as to all other

matters, as follows:

**PRELIMINARY STATEMENT**

          1.       Plaintiff Akhtar, an openly gay Pakistani man, narrowly escaped to the United

States after facing severe harassment and physical threats from his community due to his sexual

orientation.  He arrived to the United States with the hopes of living and working in safety.

Instead, he found himself coerced and forced into working in deplorable conditions for the

Defendants for nearly 15 years.

          2.       When Akhtar accepted Defendants' job offer to work at VHC, a homeopathy

store, he was told he would be working five days a week with a specific set of work

responsibilities.  He lived modestly, had a group of friends, and attempted to live a normal life again.

3.      As time went by, however, Defendants progressively expanded Akhtar's responsibilities to include providing domestic services and catering to the needs of Defendants' friends.  As the responsibilities increased, so did Akhtar's work schedule.  Within a few months of his hiring, Akhtar was working seven days a week.  Defendants went so far as to order Akhtar to move within blocks of the store to ensure he maintained this unrelenting schedule.

4.      Defendants coerced Akhtar into staying at VHC and enduring these deplorable conditions by exploiting Akhtar's circumstances.  They threatened Akhtar's job, his freedom, his livelihood, and even his life, and exploited the fact that Akhtar is gay, as well as the fact that he had financial obligations to his family.

5.      Defendants lured Akhtar into longer hours and more responsibilities through promises of work sponsorship and, ultimately, threats of deportation.  Defendants effectively trapped Akhtar by taking his passport, ostensibly for the work sponsorship, and refused to return it until law enforcement became involved.  Defendants also exploited Akhtar's sexual orientation by falsely telling him that being gay in the U.S. was illegal and then threatening to report him to the police.  Defendants told Akhtar they would overlook his "crime," however, if Akhtar performed all that was asked of him.

6.      Defendants also threatened to tell Akhtar's family about his sexual exploits with men – a fact that Defendants knew would cause shame to, and violence against, Akhtar's family in Pakistan.  Choudry took great measures to show that he had the means to carry out this threat, even going so far as to personally pay a visit to Akhtar's sister in Pakistan.

7.      Defendants even made thinly veiled threats of violence and murder, with Kunwar suggesting to Akhtar on numerous occasions that Choudry was quick to anger and had murdered his brother in Pakistan, and cautioning Akhtar to be careful not to upset Choudry.

8.      As a result of Defendants' calculated scheme, Akhtar fully believed that refusing to obey the Defendants would mean prison, deportation, harm to himself or his family, and possibly even death.  Without anywhere else to turn, Akhtar endured 15 years working unreasonably long hours for the Defendants, for pay that the New York State Department of Labor (DOL) has already determined was well below the minimum wage and overtime due to Akhtar.  But obtaining that determination led to further threats and intimidation:  after Akhtar was finally freed from Defendants, and sought redress with the DOL, Choudry and his friends threatened Akhtar in an attempt to force him to drop the claims pending with the DOL.

9.      Akhtar now seeks redress for the harm caused to him by Defendants' unlawful conduct under the Trafficking Victims Protection Reauthorization Act and for Defendants' violation of the New York Labor Law.

## NOTICE REQUIREMENT

10.      Contemporaneously with the filing of this complaint, Mr. Akhtar has mailed a copy of this Complaint to the New York State Attorney General's Office, thereby satisfying the notice requirements of Section 215 of the New York Labor Law.

## PARTIES

11.      Akhtar is a native Pakistani residing in Queens, New York.

12.      Upon information and belief, Defendant VHC is a corporation incorporated in New York State with its principal place of business located at 72-15 35th Avenue, Jackson Heights, New York 11372.

13.     Upon information and belief, Defendant Choudry is a native Pakistani residing in Queens, New York.  Upon information and belief, Choudry is an owner of VHC.

14.     Upon information and belief, Defendant Kunwar is a native Pakistani residing in Queens, New York.  Upon information and belief, Kunwar is an owner of VHC.

**JURISDICTION AND VENUE**

15.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings claims under the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPA"), 18 U.S.C. § 1595(a).

16.     This court also has supplemental jurisdiction over Akhtar's state law claim pursuant to 28 U.S.C. § 1367(a) because this claim forms part of the same case or controversy under Article III of the United States Constitution.

17.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district.

**FACTUAL BACKGROUND**

**A.     Akhtar's Early Life and Struggles in Pakistan**

18.     Akhtar was born in Gujrat, Pakistan in 1957.  His family includes his mother and father (who have both passed away), three brothers (one of whom has passed away), and six sisters (two of whom have passed away).  Of his living siblings, he is closest to two of his sisters, Robina and Perveen, who both live in Pakistan.

19.     Akhtar is an openly gay man who experienced discrimination, threats, physical assault, and violence on a daily basis while growing up in Pakistan due to his sexual orientation. His family did not accept his sexual orientation and, as a result, some members of his family

assaulted him.  His brothers-in-law also did not accept his sexual orientation, using it as an excuse to assault their wives, Akhtar's sisters Robina and Perveen.

20.      In addition to his family, Akhtar's community in Pakistan also was intolerant of his sexual orientation.  Members of his community regularly targeted and attacked Akhtar and his boyfriend, culminating in the murder of Akhtar's boyfriend by a mob of people in 1990.

21.      The same mob also targeted Akhtar, severely beating him until he lost consciousness.  He spent the next three months in a hospital recovering from his injuries.

22.      Fearing that the mob would eventually kill Akhtar as they did with Akhtar's boyfriend, Akhtar's father arranged for Akhtar to leave Pakistan for the United States soon after he recovered.

**B.      Akhtar's Employment at VHC**

23.      Upon arriving in the United States, Akhtar worked various jobs in New York City.  After losing one such job, a former employer recommended that he work at VHC, a vitamin and homeopathic product store in Queens, New York around 1998.

24.      Defendants Choudry and Kunwar own VHC, and extended an interview to Akhtar for a store clerk and cashier position.  The responsibilities for this position included opening and closing the store, taking phone calls, assisting customers with purchases, ordering and stocking store inventory, shipping products to customers, paying the bills and handling the store's money, and cleaning the store.

25.      During his interview, Choudry and Kunwar specifically questioned Akhtar about his sexual orientation.  When Akhtar answered honestly, Defendants told him that it is illegal to be gay in the United States, but represented that they would not tell anyone about his sexual orientation if he worked for Defendants and carried out the tasks Defendants asked of him.

26.     Within a few months of commencing his employment, Defendants went on a trip to India, causing Akhtar's working conditions to change dramatically.  Defendants ordered Akhtar to work seven days per week during their absence.  Akhtar was required to arrive before the store opened and stay long after it closed to clean up and prepare for the next day, working every day with minimal breaks.

27.     Although this arrangement was supposed to be temporary, lasting only for the duration of Defendants' trip to India, Choudry demanded that Akhtar continue this schedule even after Defendants returned, effectively making this grueling 70-hour minimum workweek permanent.  In fact, Defendants required that Akhtar work essentially seven days a week with few, if any, days off, for 15 years.  Defendants failed to pay Akhtar wages and overtime in accordance with the New York Labor Law during this time.  Akhtar subsequently brought claims for unpaid wages, overtime and spread of hours to the New York State Department of Labor and, during a New York State Department of Labor compliance conference in 2016, VHC agreed to pay Akhtar a settlement amount of $39,315.50 for some of these unpaid wages, overtime and spread of hours claims.

28.     Shortly after they returned from their trip to India, Defendants also began requiring that Akhtar perform domestic services, including cooking, cleaning their house, cleaning their laundry and even providing massages to Kunwar.  Akhtar generally performed these services after closing the store.

29.     Defendants also started deducting from Akhtar's pay the cost of cleaning supplies, water, toilet paper and other supplies Akhtar used at the store, notwithstanding that Akhtar used those supplies in connection with his employment for Defendants.

30.     Consistent with the demanding schedule imposed on Akhtar, Defendants also required that Akhtar move apartments so that he would live closer to work, and insisted that Akhtar move to a studio apartment within blocks of VHC.  Choudry took Akhtar's spare key to his new apartment, allowing him unfettered access to Akhtar's home.  Choudry took full advantage of his access and, upon information and belief, he used the apartment without Akhtar's consent on numerous occasions.

31.     Defendants' treatment of Akhtar progressively worsened over the course of his 15-year employment at VHC.  Defendants' conduct became especially egregious in Akhtar's last seven years at the store, and included:

(a)     Denying Akhtar the right to a lunch break during his 10-hour (or longer) workday.

(b)     Forbidding Akhtar from making personal phone calls in Defendants' presence.

(c)     Physically abusing Akhtar, including by hitting or pushing him for purportedly failing to follow their instructions.

(d)     Verbally abusing Akhtar and calling him demeaning names, including homophobic slurs.

(e)     Ordering Akhtar to perform chores for Defendants' friends, including carrying heavy boxes, fetching food or drinks, and making tea.

**C.     Defendants Threaten and Coerce Akhtar**

32.     In order to prevent Akhtar from leaving his employment with VHC, Defendants coerced and threatened Akhtar throughout the 15 years they employed him.

1.      **Immigration Sponsorship and Threats of Deportation**

33.      One of Defendants' primary threats was to have Akhtar deported.  At the beginning of Akhtar's employment, Defendants represented that they would sponsor Akhtar for a work visa in the U.S.  Defendants continued to coerce and manipulate Akhtar with false promises of a sponsorship for at least nine years.

34.      In fact, in or around 2006, Choudry took Akhtar's passport, representing that he needed it for his visa application, and then refused to return the passport until directed to do so by an officer of the New York City Police Department.

35.      Defendants also misled Akhtar into believing that a new law required Defendants to pay a purportedly quarterly employee tax of approximately $500 for sponsoring Akhtar for a work visa, and forced Akhtar to pay for that tax out of his salary.  Upon information and belief, there is no such tax in existence.

36.      Because Defendants made their work visa sponsorship dependent on Akhtar's obedience (and threatened deportation if Akhtar disobeyed them), Akhtar lived in constant fear that Defendants would withdraw their sponsorship or have him deported to Pakistan.  As a result, Akhtar believed there was no other option but to do whatever Defendants asked of him.

2.      **Threats Concerning Akhtar's Sexual Orientation**

37.      While interviewing Akhtar for a position at VHC, Defendants specifically inquired into Akhtar's sexual orientation and confirmed that Akhtar is gay.  Defendants then responded with the lie that being gay is illegal in the United States, and demanded that Akhtar "be quiet" about his sexual orientation.  In the ensuing years, Defendants frequently threatened to out Akhtar (and his sexual orientation) as a means to coerce Akhtar into following their orders.

38.     Defendants also threatened to call Akhtar's family in Pakistan and report that Akhtar was having relationships with other men in the United States.  While Akhtar's family knew about his sexual orientation, their culture forbade actually engaging in sexual relations with other men, and a report from Defendants that Akhtar was acting on his sexual orientation could have grave consequences for Akhtar's family in Pakistan.  Indeed, Akhtar understood that his sisters in Pakistan had been physically assaulted by their husbands merely for conversing with Akhtar over the phone.  He feared a call from Defendants could lead to significantly more violence.  Likewise, if news relating to Akhtar's sexual orientation were to be broadcasted to the community, there very likely could be violent backlash against Akhtar's family.

39.     Choudry told Akhtar that his brother and other family members were "strong" in Pakistan and could cause violence to Akhtar's family.  Choudry and Kunwar displayed their capability to reach Akhtar's family by visiting Akhtar's sister, Robina, during one of their trips to Pakistan.

40.     These threats against Akhtar's family effectively coerced him into acquiescing to the Defendants' demands.

**3.     Threats of Physical Violence**

41.     Defendants also made veiled threats of violence directly against Akhtar.  For example, on at least three occasions, Kunwar informed Akhtar that Choudry was a violent and dangerous man.  She explained that when Choudry was younger, he killed his brother as a result of sibling rivalry.  Kunwar cautioned Akhtar not to make Choudry mad.  Akhtar understood this to be a threat that Choudry may become violent if Akhtar did anything to upset him.

    4.    **Isolation of Akhtar**

42.    Defendants also engaged in a pattern of behavior to isolate Akhtar and keep him dependent on Defendants and his employment at VHC.

43.    Defendants consistently refused to help Akhtar learn English.  When Akhtar did have occasion to speak in English – for instance, with a customer – Defendants laughed or made humiliating comments.

44.    Defendants engaged in continuous efforts to keep Akhtar from talking with friends or family while he was at the store.  When Defendants noticed Akhtar on a personal phone call, they ordered him to get off the phone.  Defendants also took steps to prevent Akhtar from meeting with friends.  Such actions isolated Akhtar and made him heavily dependent on Defendants and his job at VHC due to a lack of connection with others in his life.

45.    Choudry also prevented Akhtar from seeking help elsewhere in the Pakistani community in Queens.  Choudry is a well-known businessman in that community and has connections and dealings with other Pakistani businesses in the area.  Akhtar was aware of Choudry's influence in the community and feared retaliation if he left VHC or even disobeyed Defendants' orders.

46.    Akhtar depended on his income from VHC and did not have the financial means to support himself otherwise. Akhtar also supported family in Pakistan with the meager earnings paid to him by VHC.  Choudry was aware of Akhtar's financial situation and knew that the very limited job prospects outside of VHC coerced Akhtar into continuing his work for Defendants.

**D.    Defendants Fire Akhtar**

47.    In November 2013, Choudry ordered Akhtar not to come to work at VHC.  When Akhtar went to VHC for the sole purpose of collecting the personal belongings that he kept at the

store, Choudry physically prevented Akhtar from entering; when Akhtar was finally able to gain

entry, he found all of his personal possessions missing.

48.     Meanwhile, Choudry called the police and made false accusations that Akhtar

stole a significant sum of cash from VHC when he attempted to collect his personal belongings.

Choudry even claimed to the police that Akhtar stole *millions of dollars* over the course of his

employment at VHC.  A judge ultimately dismissed the case against Akhtar in its entirety.

**E.     Akhtar Seeks the Wages to Which He Was Entitled,**
**        and Choudry Retaliates Against Akhtar**

49.     After Defendants' termination of Akhtar's employment, Akhtar sought assistance

from Safe Horizon, a non-profit organization that assists victims of crime and abuse.  Safe

Horizon referred Akhtar to The Legal Aid Society, which filed a New York State Department of

Labor wage claim on Akhtar's behalf against Choudry and Kunwar on May 19, 2015.

Specifically, Akhtar claimed that Defendants failed to pay Akhtar his full wage and overtime pay

during his employment at VHC.  The Department of Labor made an initial finding that VHC

owed Akhtar for unpaid wages, overtime and spread of hours.  In August 2016, the Department

of Labor scheduled a compliance conference with Akhtar and Choudry in an effort to settle the

claims.  The parties came to an agreement whereby VHC would pay Akhtar $39,315.50 to settle

his wage, overtime and spread of hours claims.  Thereafter, VHC paid Akhtar $39,315.50 to

settle those claims.

50.     While Akhtar's wage claims were pending with the Department of Labor,

Defendants and their allies engaged in a concerted campaign of retaliation.  For example, five

days before the scheduled conference on the Department of Labor claim, Akhtar received a death

threat from Choudry's close friend, Ashraf Qureshi.  Akhtar subsequently filed a retaliation

claim against Defendants.  On August 9, 2017, the Anti-Retaliation Unit of the Department of

Labor subsequently investigated the claim and found that Defendants violated NY Labor Law §
215 and assessed damages and penalties.  There has been no payment by Defendants to date and,
as a result, this proceeding is currently pending at the Department of Labor.

51.     Choudry also personally sought to intimidate Akhtar.  One night, as he left the
employment he located after VHC, he noticed a vehicle waiting on the street.  He looked inside
and found Choudry staring back at him.  After a period during which Choudry did not talk or
move, Choudry slowly drove away, maintaining eye contact with Akhtar.

52.     Choudry also engaged in a campaign to prevent Akhtar's business venture.  After
Choudry fired Akhtar, Akhtar opened his own homeopathy store but soon discovered that
Choudry purposefully prevented businesses from working with Akhtar.  For instance, Choudry
threatened to stop doing business with a supplier if he corresponded with Akhtar.

53.     In another instance, Choudry prevented a company from selling business cards to
Akhtar for his store.  In addition, a newspaper company would not allow Akhtar to advertise his
store in their newspaper because of the newspaper owner's relationship with Choudry.

**F.     Akhtar's Damages**

54.     As a result of Defendants' treatment, Akhtar suffered physical and emotional
stress, among other health problems.

55.     At one point, Akhtar attempted to visit the doctor when he first felt ill.  However,
due to his work schedule, Defendants prevented Akhtar from seeking medical help to address his
health problems.  Indeed, Defendants would even refuse Akhtar's requests to take a few hours
off in order to visit the doctor, causing him to live with his health problems untreated.

56.     Akhtar also continues to suffer physical injuries.  During his employment with
Defendants, Akhtar was ordered to carry heavy items for non-work purposes.  As a result, Akhtar

developed shooting pains in his arms, hands, and back.  He continues to live with this intermittent pain.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Involuntary Servitude, 18 U.S.C.A. §§ 1584, 1595

57.     Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

58.     Under 18 U.S.C. § 1584, it is unlawful to "knowingly and willfully hold[] to involuntary servitude . . . any other person for any term."

59.     Involuntary servitude is defined as "a condition of servitude in which the victim is forced to work for a defendant by use or threat of physical restraint or injury or by use of coercion through law or legal process."

60.     As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

61.     In violation of 18 U.S.C. § 1584, Defendants knowingly and willfully forced Akhtar to work for them for at least 15 years, including working at VHC and performing domestic chores for Defendants and their friends.

62.     Defendants used physical violence, threats of physical injury, and threats of abuse of legal processes to induce Akhtar into working for Defendants, including, but not limited to, assaulting Akhtar, limiting Akhtar's interactions with his friends and family, threatening deportation and imprisonment, and threatening the life and physical well-being of Akhtar and his family.

63.     Defendants' threats, abuse and coercion caused Akhtar to believe he had no choice but to work for Defendants.

64.     As a direct and proximate result of Defendants' actions, Akhtar has suffered damages in an amount to be determined at trial.

65.     Akhtar is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

### SECOND CAUSE OF ACTION

### Forced Labor, 18 U.S.C.A. §§ 1589, 1595

66.     Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

67.     Akhtar brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

68.     Under 18 U.S.C. § 1589, it is unlawful to "knowingly provide[] or obtain[] the labor or services of a person by any one of, or by any combination of, the following means-- (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

69.     Defendants were perpetrators of 18 U.S.C. § 1589.

70.     In violation of 18 U.S.C. § 1589, Defendants knowingly obtained services and labor from Akhtar by means of coercion, isolation, intimidation, deprivation of Akhtar's passport, and through threats of violence, imprisonment and deportation.  Defendants also threatened to harm Akhtar's family in Pakistan.

71.     In violation of 18 U.S.C. § 1589, Defendants engaged in a scheme to make Akhtar believe that if he did not perform labor or services for Defendants, he would be deported to Pakistan or imprisoned.  As part of this scheme, Defendants also continuously promised to sponsor Akhtar for a work visa for at least six years.

72.     As a direct and proximate result of Defendants' actions, Akhtar has suffered damages in an amount to be determined at trial.

73.     Pursuant to 18 U.S.C. § 1595(a), Akhtar is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

### THIRD CAUSE OF ACTION

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C.A. §§ 1590, 1595**

74.     Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

75.     Akhtar brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

76.     Under 18 U.S.C. § 1590, it is unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both."

77.     Defendants were perpetrators of 18 U.S.C. § 1590.

78.     In violation of 18 U.S.C. § 1590, Defendants knowingly recruited, harbored, transported, provided, or obtained Akhtar for labor or services.

79.     Defendants obtained services and labor from Akhtar by means of coercion, isolation, intimidation, deprivation of Akhtar's passport, and via threats of violence, imprisonment and deportation.  Defendants also threatened to harm Akhtar's family in Pakistan.

80.     Defendants engaged in a scheme to make Akhtar believe that if he did not perform labor or services for Defendants, he would be deported to Pakistan or imprisoned.  As part of this scheme, Defendants also continuously promised for at least 6 years to sponsor Akhtar for a work visa.

81.     As a result of Defendants' conduct, Akhtar has suffered damages in an amount to be determined at trial.

82.     Pursuant to 18 U.S.C. § 1595(a), Akhtar is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## FOURTH CAUSE OF ACTION

### Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§ 1592, 1595

83.     Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

84.     Akhtar brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

85.     Under 18 U.S.C. § 1592, it is unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person (1) in the course of a violation of section ... 1584, 1589, [or] 1590 ...; (2) with intent to violate section ... 1584, 1589, [or] 1590; or (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons . . . ."

86.     Under 22 U.S.C. § 7102(9) of the TVPA, a "severe form of trafficking in persons" is defined as "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."

87.     Akhtar was a victim of a "severe form of trafficking" as a result of Defendants obtaining labor and services from Akhtar by means of threats, coercion, isolation, intimidation, and force.  Defendants therefore violated 18 U.S.C. § 1592.

88.     As a result of Defendants' conduct, Akhtar has suffered damages in an amount to be determined at trial.

89.     Pursuant to 18 U.S.C. § 1595(a), Akhtar is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## FIFTH CAUSE OF ACTION

### Benefitting Financially from Trafficking in Persons
### in Violation of 18 U.S.C. §§ 1593A, 1595

90.     Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

91.     Akhtar brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

92.     Under 18 U.S.C. § 1592, it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section . . . 1592[] or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section."

93.     Defendants knowingly benefitted financially or by receiving something of value, specifically Akhtar's services at Defendants' residence and at VHC, from participation in a venture that engaged in activities in violation of 18 U.S.C. § 1592 and 1595(a), and either knew or recklessly disregarded the fact that the venture had engaged in such violation.

94.     As a result of Defendants' conduct, Akhtar has suffered damages in an amount to be determined at trial.

95.    Pursuant to 18 U.S.C. § 1595(a), Akhtar is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## SIXTH CAUSE OF ACTION

### Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, 1592

96.    Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

97.    Akhtar brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

98.    Under 18 U.S.C. § 1594(b), it is unlawful to "conspire[] with another to violate section ... 1589, 1590, or 1592."

99.    Defendants conspired to violate 18 U.S.C. §§ 1589, 1590, and 1592 by agreeing to obtain or provide Akhtar's services or otherwise traffic Akhtar through means of force, harm, threats, or withholding of travel documents.

100.    As a result of Defendants' conduct, Akhtar has suffered damages in an amount to be determined at trial.

101.    Pursuant to 18 U.S.C. § 1595(a), Akhtar is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## SEVENTH CAUSE OF ACTION

### Attempt to Violate 18 U.S.C. §§ 1584, 1589, 1590

102.    Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

103.    Akhtar brings this claim for relief pursuant to 18 U.S.C. § 1595.  As set forth in 18 U.S.C. § 1595, Akhtar may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of these provisions.

104.    Under 18 U.S.C. § 1594(b), it is unlawful to "attempt[] to violate section ... 1584, 1589, [or] 1590."

105.    Defendants attempted to violate 18 U.S.C. §§ 1584, 1589, and 1590 by attempting to obtain or provide Akhtar's services or otherwise traffic Akhtar through means of force, harm, threats, or withholding of travel documents.

106.    As a result of Defendants' conduct, Akhtar has suffered damages.

107.    Pursuant to 18 U.S.C. § 1595(a), Akhtar is entitled to recover compensatory and punitive damages and reasonable attorneys' fees and costs for Defendants' wrongful conduct.

## EIGHTH CAUSE OF ACTION

### Violation of New York Labor Law § 215

108.    Akhtar repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

109.    Under New York Labor Law ("NYLL") § 215, it is unlawful to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint . . . to the commissioner . . . or any other

person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . . (ii) because such employer or person believes that such employee has made a complaint . . . to the commissioner . . . or to any other person that the employer has violated any provision of this chapter . . . (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter, or (iv) because such employee has provided information to the commissioner or his or her authorized representative . . . or (vi) because such employee has otherwise exercised rights protected under this chapter, or (vii) because the employer has received an adverse determination from the commissioner involving the employee."

110.   In violation of NYLL § 215, Defendants threatened and retaliated against Akhtar because Akhtar provided information, in good faith, regarding Defendants' labor law violation, and because Akhtar participated in a Department of Labor proceeding.

111.   Defendants threatened to call the immigration authorities to report Akhtar if he continued to request payment for overtime hours worked.

112.   Through Defendants' friend, Ashraf Qureshi, Defendants sent Akhtar threats of death prior to Akhtar attending a compliance conference schedule for a pending Department of Labor investigation.

113.   As a result of Defendants' violations of NYLL § 215, Akhtar has suffered damages in an amount to be determined at trial.

114.   Due to Defendant's NYLL violations related to its actions in threatening, discriminating, and retaliating against Akhtar, Akhtar is entitled to recover from Defendants liquidated damages, emotional distress damages, prejudgment interest, reasonable attorneys' fees and costs and disbursements in connection with this action pursuant to NYLL § 215

## JURY DEMAND

Akhtar hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Akhtar respectfully requests that this Court grant the following relief in amounts to be determined at trial, on each count detailed above:

1. Declaring that Defendants violated Sections 1584, 1589, 1590, 1592, 1593A, 1595 under the Trafficking Victims Protection Reauthorization Act of 2008 and Section 215 of the New York Labor Law;

2. Awarding Akhtar restitution in the full amount of his losses, punitive and compensatory damages for pain and suffering, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

3. Awarding Akhtar liquidated damages in the amount of $20,000, emotional distress damages, costs and reasonable attorneys' fees, and other appropriate relief pursuant to New York Labor Law § 215;

4. Awarding Akhtar pre-judgment and post-judgment interest as allowed by law; and

5. Awarding Akhtar other legal and equitable relief as the Court may deem just and proper.

Dated:  March 12, 2019
        New York, New York

By:   s/Gavin D. Schryver

KASOWITZ BENSON TORRES LLP
Gavin D. Schryver (gschryver@kasowitz.com)
Marshall Guiboa (mguiboa@kasowitz.com)
Megan Reilly (mreilly@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.  (212) 506-1700

The Legal Aid Society
Janet E. Sabel, Attorney-in-Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Karen Cacace, Director, Employment Law Unit
(kcacace@legal-aid.org)
Heidi Cain, Of Counsel (hlcain@legal-aid.org)
199 Water Street, 3rd Floor
New York, NY 10038

*Attorneys for Mahmood Akhtar*